```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA


    THE ESTATE OF ARTHUR PHILLIPS    :    CIVIL ACTION
                                     :
         V.                          :
                                     :
    CORRECT CARE SOLUTIONS, LLC,     :    NO. 19-3822
    et al.                           :
```

MEMORANDUM

Bartle, J.                                          January 28, 2021

　　　　　Plaintiff Phyllis Phillips, as Administratrix of the Estate of Arthur Phillips, brings claims under 42 U.S.C § 1983 against defendants Correct Care Solutions, LLC ("CCS") and MHM Correctional Services Inc. ("MHM"), as well as against Pennsylvania Department of Corrections employees Barbara Herbst and Hannah Jenkins in their individual capacities, for failing to prevent the suicide of Arthur Phillips, plaintiff's late husband, while he was incarcerated at the State Correctional Institution at Graterford ("SCI Graterford"). Before the Court is the motion of the individual defendants for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.[1]

---

1.　　　　Plaintiff has voluntarily dismissed defendants CCS and MHM with prejudice. Plaintiff now concedes that there is insufficient evidence to oppose summary judgment in favor of defendant Herbst.

I

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A factual dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A factual dispute is material if it might affect the outcome of the suit under governing law.  Id. at 248.

When briefing a motion for summary judgment and response, the parties must support each factual assertion or dispute with either a citation to the record or by showing that the materials cited do not establish the absence or the presence of a disputed fact.  Fed. R. Civ. P. 56(c)(1).  The Court considers materials cited by the parties in the summary judgment record.  Fed. R. Civ. P. 56(c)(3).  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

We view the facts and draw all inferences in favor of the non-moving party.  See In re Flat Glass Antitrust Litig.,

385 F.3d 350, 357 (3d Cir. 2004).  However, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [the non-moving party]."  See Anderson, 477 U.S. at 252.  "The plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Id. at 257.

II

The following facts are undisputed.  On April 20, 2017, decedent Arthur Phillips was arrested and charged in Chester County for having a sexual relationship with a 15-year old girl who was a student at the school where he taught.  Phillips was detained at the Chester County Prison to await trial.

At the time of his arrest, Phillips was taking Prozac as prescribed by a Veterans Health Administration physician to reduce depression and the risk of suicide.  Phillips also had a history of alcoholism and suicidal ideation.  In August 2015, after ingesting a bottle of sleeping pills, Phillips was hospitalized and spent several weeks in a facility for drug and alcohol abuse treatment.  On the day before his arrest on April 20, 2017, he was hospitalized again after he was involved in a car accident.  He had been drinking and was found with a note expressing his love for his wife.  Several days after his arrest, Chester County Prison staff caught Phillips hanging a bed sheet in his cell and referred him to

a prison psychologist.  Phillips denied that the car accident and bed sheet incident were attempts to take his life.  After an examination by a psychologist and a medical doctor at the Chester County Prison, Phillips' security level was increased.  He was placed on suicide watch.  In the months that followed, Phillips' depression diagnosis was upgraded to major depression and his Prozac prescription was increased to 60 mg a day.  The prison recorded his car accident, the bed sheet incident, the major depression diagnosis, and the prescription for an enhanced level of Prozac.  Phillips' security level upgrade and placement on suicide watch were also set forth in the prison record.

On November 21, 2017, Phillips pleaded guilty to several charges in connection with his sexual relationship with the 15-year old student, including involuntary deviate sexual intercourse.  He was sentenced to an aggregate term of imprisonment of 10 to 20 years.  At the time his sentence was imposed, he was 68 years old.

Phillips was transferred to SCI Graterford on January 24, 2018.  In accordance with prison policy, the housing unit officer receiving Phillips completed a suicide risk indicator checklist.  The officer was to check whether Phillips was exhibiting several specific behaviors — for example, whether he was making threats to harm himself, showed signs of depression, or was taking any psychiatric medication.  The officer recorded only that Phillips told him he was taking psychiatric medication.

-4-

Defendant Hannah Jenkins was employed as a Psychological Services Specialist at SCI Graterford. She was assigned to the intake unit on the day of Phillips' arrival. As a part of this assignment, Jenkins questioned Phillips to identify whether he had any immediate psychological or psychiatric needs, including whether he presented a risk of suicide. Jenkins completed an initial reception mental health questionnaire as a part of this process.

Jenkins noted in the mental health questionnaire that Phillips did not present or volunteer any of the following behaviors: "history of depression"; "intentionally harmed or injured self in the past"; "tried to kill self in past"; "thinks would be better off dead"; "having current thoughts of self-harm"; "thinking about or wanting to harm or kill others"; "hearing voices or seeing things that others cannot"; "thinks someone else is controlling thoughts, reading mind, and/or stealing thoughts"; "believes there is a plot or conspiracy against him/her"; "believes has special powers or a special mission to perform"; "has been hospitalized for mental health reasons"; or "feeling helpless/hopeless."

Jenkins wrote only that Phillips told her he was feeling "a little" depressed, previously received counselling for mental health reasons through the Veterans Health Administration, and was prescribed Prozac for a depressed mood. She ordered Phillips a non-emergent referral to a psychiatrist because he told her he took

Prozac to treat depression.  Jenkins reviewed the suicide risk indicator checklist completed by Phillips' housing unit officer.  She wrote "no referral necessary" in the "Clinical Action" section of the checklist and cleared Phillips to be housed in a general population unit.

According to Jenkins, Phillips presented no clinical indication, nor did he share information, that he could not be housed in a general population unit.  Jenkins did not review any records from the Chester County Prison in making this determination.  She relied on how Phillips' presented himself and what he told her.

Brian Schneider was a Regional Licensed Psychologist Manager at SCI Graterford.  He supervised Jenkins.  According to Schneider, at the time of Phillips' intake mental health assessments by Psychological Services Specialists ("PSS's") relied on how inmates presented themselves and the information they volunteered.  At the time, SCI Graterford received roughly 20 to 30 new inmates a day.  Three to four PSS's were assigned to the intake unit.  They were not expected to search for or review records from transferring facilities.  Nearly half of new intakes at SCI Graterford took psychiatric medication.  If an inmate reported taking such medication, PSS's were required to make a non-emergent referral to a psychiatrist.  However, they were not responsible for ensuring that new intakes continued to receive prescribed

medications they reported taking while at a prior facility. Schneider explained that this was the responsibility of the nursing staff.

Defendant Barbara Herbst was employed as a Registered Nurse at SCI Graterford.  Herbst medically screened Phillips on the day of his intake.  Unlike Jenkins, Herbst recorded that Phillips was diagnosed with and had a history of depression.  However, Herbst ordered a routine referral for the Prozac and cleared Phillips for general population.

Defendant MHM had a contract to provide psychiatric services to the inmates at SCI Graterford.  MHM medical practitioners were responsible for continuing the medication of arriving inmates upon referral by Pennsylvania Department of Corrections staff.  MHM Statewide Medical Director Robert J. Sena, M.D. reviewed the circumstances surrounding Phillips' suicide.  Dr. Sena stated in his report that Phillips' medication was not continued because his transfer sheet from the Chester County Prison, which verified what medications he took, had not been properly submitted to a psychiatrist due to "staff error."

Phillips, as noted above, was assigned to a general population housing unit at SCI Graterford upon his arrival on January 24, 2018.  By January 28, he had not yet seen a psychiatrist and had still not been given his medication.  At 8:00

a.m. that morning, Phillips submitted a medical sick call request to "psychology" in which he wrote:

> Have not received my Prozac yet & been here since 1/24/18. I need this med. Had to put in grievance form & this form. They told me you haven't ordered them yet.

Phillips was found dead that afternoon, hanging in his prison cell.

In support of Phillips' estate's claims against defendants, plaintiff submitted the expert report of George R. Hardinger. Hardinger is the Warden of the Carroll County Detention Center in Maryland. He reviewed Phillips' records from the Chester County Prison and SCI Graterford, including the suicide risk indicators checklist completed by Phillips' housing officer and reviewed by Jenkins. Hardinger concludes that "Defendants" exhibited a "deliberate indifference" to Phillips' risk for suicide by failing to review the records from the Chester County Prison "readily available" to them.[2]

Warden Hardinger also concluded that "defendants" failure to review Phillips' Chester County Prison records was in violation of Sections 2A.4 and 2A.5b and c of Pennsylvania Department of Corrections Policy Statement 13.8.1 ("Access to

---

2.      Plaintiff's counsel states that Jenkins had the ability to review records from the Chester County Prison at the time of Phillips' intake. He simply cites to Phillips' Chester County Prison records and a representation he made to Jenkins in a question he asked during her deposition. Jenkins never confirmed the representation. Thus, counsel's representation is not evidence and will not be considered.

Mental Health Care"), effective May 9, 2016.  Section 2D.4 provides:

> The first point of contact with a new reception, whether it is in the Diagnostic and Classification Center (DCC) or in a permanent facility, is the receiving officer. Therefore, every receiving officer shall receive training in the recognition of the signs and symptoms of mental illness and intellectual disability. Each facility shall develop an appropriate system for the immediate referral of any new reception identified as potentially mentally ill, suicidal, intellectually disabled, etc., to the appropriate staff for close observation and further evaluation. <u>An inmate who is currently receiving medication for mental health treatment shall be scheduled for the psychiatrist/Certified Registered Nurse Practitioner/Psychiatric Services (PCRNP) as soon as possible and be seen by the psychiatrist no later than 72 hours after arrival.</u> (emphasis added).

Sections 2D.5b and c provide:

> b. <u>DCC psychology staff shall be alert and search for indications of previous psychiatric/psychological treatment, current or prior suicidality</u>, use of psychotropic medications, hospitalizations or outpatient treatment and/or evaluations, Intellectual Disability placements, or history of drug or alcohol abuse. <u>Every effort shall be made to obtain prior records of hospitalizations, treatment programs, or specialized placements</u>. (emphasis added).
>
> c. Prior to transfer, when suicidality, assault potential, or other special treatment needs are identified during the classification process, appropriate notification via case conference shall be made by DCC psychology staff either by email or phone call to the receiving LPM/designee. <u>A corresponding Inmate Cumulative Adjustment Record (ICAR) entry</u>

-9-

<u>shall be made by DCC staff documenting the case conference as previous treatment recommendations, ICAR entries, and psychological reports are not sufficient means of communicating about unstable, potentially suicidal, or violent mental health transfers.</u> (emphasis added).

III

A state correctional institution may be held liable under 42 U.S.C. § 1983 for failing to prevent the suicide of a prisoner under the Eighth Amendment to the United States Constitution.  See Palakovic v. Wetzel, 854 F.3d 209, 221-24 (3d Cir. 2017).  A claim that a corrections official failed to prevent the suicide of a prisoner under the Eighth Amendment is "essentially equivalent" to a claim that an official failed to prevent the suicide of a pre-trial detainee under the Fourteenth Amendment.  Id. at 223.

Whether concerning the suicide of a pre-trial detainee or a convicted prisoner, a plaintiff must establish that: (1) "the individual had a particular vulnerability to suicide, meaning that there was a strong likelihood, rather than a mere possibility, that a suicide would be attempted"; (2) "the prison official knew or should have known of the individual's particular vulnerability"; and (3) "the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability."  Palakovic, 854 F.3d at 224 (internal quotations omitted).

Prison officials violate a prisoner's rights under the Eight Amendment by failing to prevent a suicide where they "know" of a "particular vulnerability" to suicide. Palakovic, 854 F.3d at 224. Such knowledge exists where prison officials "have had actual knowledge of an obviously serious suicide threat, a history of suicide attempts, or a psychiatric diagnosis identifying suicidal propensities." Id. at 222-23.

Liability may also attach where a prison official "should have known" of a prisoner's "particular vulnerability" to suicide. Id. at 224. However, whether a prison official "should have known" of a particular vulnerability to suicide is not equivalent to a negligent failure to recognize a high risk of suicide. Palakovic, 854 F.3d at 223; Woloszyn v. Cty. of Lawrence, 396 F.3d 314, 321 (3d Cir. 2005); Colburn v. Upper Darby Twp., 946 F.2d 1017, 1025 (3d Cir. 1991). Liability follows only where a defendant acted with reckless or deliberate indifference to a particular vulnerability for suicide. Palakovic, 854 F.3d at 223. To prove reckless or deliberate indifference, a plaintiff must establish "something more culpable on the part of the officials than a negligent failure to recognize the high risk of suicide." Id. at 231. The plaintiff must prove that there was a "strong likelihood" that the prisoner would attempt suicide "so obvious that a lay person would easily recognize the necessity for preventative action." Id. at 222 (internal quotations omitted).

The parties dispute whether Jenkins was required to search for and review Phillips' Chester County Prison records as a part of her assessment pursuant to Pennsylvania Department of Corrections Policy Statement 13.8.1. As noted above, plaintiff does not properly support the contention that defendants had Phillips' Chester County Prison records in their possession at the time of his intake.

However, even if the records were available to Jenkins and Policy Statement 13.8.1 required her to review them for her assessment of Phillips, the violation of a departmental regulation or practice is not a violation of the United States Constitution. See Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017). It is reckless or deliberate indifference to a strong and obvious likelihood of suicide that is protected by the Eighth Amendment. See Palakovic, 854 F.3d at 221-31. Here it is undisputed that Jenkins relied only on Phillips' presentation and what he told her during her questioning in deciding to provide him with a non-emergent referral to a psychiatrist and to clear him for general population.

While we agree that Phillips' denial of a history of depression contradicted his prescription for Prozac, there is no basis to conclude that Jenkins' failure to explore this contradiction is equivalent to recklessly or deliberately ignoring

a strong and obvious risk that Phillips would try to take his own life.  See Colburn, 946 F.2d at 1026-27.

Phillips' death at SCI Graterford was indeed tragic and may have been the result of negligence on the part of one or more officials at the prison.  Nonetheless, there is no evidence in the record from which a reasonable juror could find that defendant Herbst or defendant Jenkins acted with reckless or deliberate indifference under the Eighth Amendment.  Palakovic, 854 F.3d at 223.  Accordingly, the Court will grant summary judgment in favor of defendants Barbara Herbst and Hannah Jenkins and against the plaintiff.